UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15-cv-126-FDW

| | |
|---|---|
| ZACKARY ALLEN BLANKENSHIP, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| LT. FNU SETZER, et al., ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

THIS MATTER comes before the Court on a Motion for Summary Judgment, filed by Defendants Debra Setzer, Randy Carswell, Josh Smith, and Ginger Laws. (Doc. No. 22).

I.     **BACKGROUND**

A.     **Procedural Background**

Pro Plaintiff Zackary Allen Blankenship, an inmate currently incarcerated in the Burke-Catawba District Confinement Facility ("Burke-Catawba" or the "Burke-Catawba jail"), filed this action on June 26, 2015, pursuant to 42 U.S.C. § 1983. Plaintiff named as Defendants the following Burke-Catawba employees: (1) Bill Boughman, identified by Plaintiff as the jail administrator at all relevant times[1]; (2) Debra Setzer, a lieutenant at the Burke-Catawba jail at all relevant times; (3) Randy Carswell, a sergeant at the Burke-Catawba jail at all relevant times; (4) Josh Smith, a sergeant at the Burke-Catawba jail at all relevant times; and (5) Ginger Laws,[2] a sergeant at the Burke-Catawba jail at all relevant times. Plaintiff alleged that Defendants

---

[1] Boughman's last name was incorrectly spelled Bowman in the Complaint.
[2] Plaintiff initially named Tammy Lail as a Defendant, but he amended his complaint on August 19, 2015, to substitute Ginger Laws for Lail. (Doc. No. 11).

1

violated his First Amendment right to practice his religion (Christianity) at the jail during various times from May to June 2015. (Doc. No. 1). On July 23, 2015, this Court conducted a frivolity review and dismissed Boughman as a Defendant, leaving as Defendants Setzer, Carswell, Smith, and Laws. (Doc. No. 6).

Defendants Setzer, Carswell, Smith, and Laws filed the pending summary judgment motion on January 4, 2016. (Doc. No. 22). On the same day, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 23). After receiving an extension of time, Plaintiff filed a response to the summary judgment motion on February 5, 2016. (Doc. No. 27). Defendants filed a reply to Plaintiff's response on February 11, 2016. (Doc. No. 28).

**B.     Factual Background**

**1.     Plaintiff's Allegations**

Plaintiff was incarcerated as a pre-trial detainee at Burke-Catawba beginning on February 10, 2015. Because Plaintiff had pending criminal charges in Catawba County, he was transferred from Burke-Catawba to the Catawba County Jail several times for court appearances. (Doc. No. 22-2 at ¶ 6: Setzer Decl.). Plaintiff was sent to Catawba County Jail from March 6, 11:16 pm, until March 10, 5:51 pm; May 3, 1:04 pm, until May 6, 5:57 pm; and June 15, 10:57 pm, until June 18, 4:50 pm. (Id. at ¶ 5, Ex. 1). Plaintiff alleges that Defendants violated his First Amendment right to exercise his religion (Christianity) at various times while he was incarcerated or during transfer from Burke-Catawba to the Catawba County Jail. Specifically, as to Defendant Setzer, Plaintiff alleges that on June 17, 2015, Setzer violated his First Amendment right to the free exercise of his religion by taking his property while he was in the Catawba

2

County Jail, in retaliation for him filing a grievance. (Doc. No. 1 at 3). As to Defendant Carswell, Plaintiff alleges that during the second week of May 15, 2015, Carswell violated his First Amendment rights by taking his Bible during a cell search, because the Bible did not have a cover on it. (Id. at 5). As to Defendant Smith, Plaintiff alleges that on June 1 and 15, 2015, Smith violated his First Amendment rights by informing Plaintiff he could not take his Bible during a transfer from Burke-Catawba to the Catawba County Jail. (Id. at 3). As to Defendant Laws, Plaintiff alleges that on May 5, 2015, Laws violated Plaintiff's First Amendment rights by informing Plaintiff that he could not take his Bible during a transfer from Burke-Catawba to the Catawba County Jail. (Id. at 3; Doc. No. 11).

2. **Defendants' Summary Judgment Materials**

To support the summary judgment motion, Defendants rely on all pleadings, exhibits, and other documents incorporated into the record, including the Declarations of Defendants Setzer, Carswell, Smith, and Laws. Defendants contend that they are entitled to summary judgment for several reasons. Defendants first contend that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act as to Plaintiff's claim that Setzer took his property while he was in the Catawba County Jail, and that Carswell took his Bible during a cell search. Defendants further contend that, even assuming Plaintiff exhausted his administrative remedies, Plaintiff's claims should be dismissed on the merits. Defendants contend that Burke-Catawba's policies at issue in this case—allowing only legal materials during a transfer, and prohibiting books in cells without covers—advance legitimate security interests and do not implicate Plaintiff's First Amendment rights. Defendants further contend that there is no evidence that Setzer's acts were retaliatory or chilled Plaintiff's constitutional rights.

a. **Defendants' Evidence as to Burke-Catawba's Policies Regarding the Exercise of**

**Religion by Inmates**

On summary judgment, Defendants have presented evidence showing that inmates incarcerated at Burke-Catawba have numerous opportunities to practice their religious beliefs. Religious books, including Bibles with covers, are allowed in inmate's cells. (Doc. No. 22-2 at ¶ 14: Setzer Decl.). If an inmate does not have a Bible and requests one, Burke-Catawba staff contacts local churches to obtain a Bible free of charge. (Id. at ¶ 15). Spanish-speaking inmates are also provided Spanish-language Bibles. (Id.). Formal religious services are held once a week for male inmates and once a week for female inmates. (Id. at ¶ 12). In addition to formal services, an inmate's pastor is allowed to visit the inmate Monday through Friday from 6 to 8 p.m. (Id. at ¶ 13).

While inmates are allowed to have three hard-covered books, a Bible with a cover, and legal papers in their cell, they are not allowed to have books without covers in their cells due to security concerns. (Doc. No. 22-3 at ¶ 11: Carswell Decl.). During random cell checks, Burke-Catawba employees review book covers to determine if books violate Burke-Catawba policies, which prohibit books promoting violence or sexual behavior. (Id. at ¶¶ 8-11). If a book has a cover, an officer can determine the book's content without reading the entire book. (Id.). Because Burke-Catawba houses up to 180 inmates at any given time, it would be extremely time-consuming and cumbersome for officers to review the entire contents of all books without covers to determine if they violated Burke-Catawba policies. (Id. at ¶ 11).

**b. Defendants' Evidence as to Burke-Catawba's Policies Regarding Transfer from Burke-Catawba to other Prison Facilities**

When inmates are transferred from Burke-Catawba to another facility, inmates are prohibited from bringing anything with them to the new facility except legal documents. (Doc.

No. 22-2 at ¶ 7: Setzer Decl.).  Inmates are informed about this policy before they are transported.  (Id.).  Legitimate penological reasons exist for this policy.  First, the policy exists for security reasons to prevent inmates from bringing contraband on the van to another facility, which could lead to theft or violence in the van.  (Id.).  Second, the policy also protects the safety and security of the transferring officers.  (Id.).  Third, it would be extremely difficult and time-consuming for a detention officer to search every item that an inmate brings on the transport van.  See (Id. at 8).  When inmates are transferred to another facility, their property is taken from their cell, put in storage, and returned to them when they return to Burke-Catawba.  (Id. at ¶ 10; Doc. No. 22-3 at ¶ 5: Carswell Decl.).

    **c.  Defendants' Evidence as to Plaintiff's Incarceration at Burke-Catawba**

Plaintiff was incarcerated at Burke-Catawba beginning on February 10, 2015.  (Doc. No. 22-2 at ¶ 5: Setzer Decl., Ex. 1).  Since Plaintiff had pending criminal charges in Catawba County, he was transferred from Burke-Catawba to the Catawba County Jail for court appearances.  (Id. at ¶ 6).  Plaintiff was sent to Catawba County Jail from March 6, 11:16 pm, until March 10, 5:51 pm; May 3, 1:04 pm, until May 6, 5:57 pm; and June 15, 10:57 pm, until June 18, 4:50 pm.  (Id. at ¶ 5, Ex. 1).

On or about the second week of May, Plaintiff claims that Carswell took his uncovered Bible during a cell search.  (Doc. No. 1 at 5).  Carswell does not recall the incident, but Burke-Catawba policy prohibits uncovered books from being in an inmate's cell for security reasons.  (Doc. No. 22-3 at ¶¶ 6; 11: Carswell Decl.).  Plaintiff alleges that, when he was transferred to the Catawba County Jail in May and June, Smith and Laws only allowed him to take his legal documents, not his Bible.  (Doc. No. 1 at 3; Doc. No. 11).  Although neither Smith nor Laws specifically recalls taking Plaintiff's Bible, it would be consistent with Burke-Catawba policy if

5

they did.  (Doc. No. 22-4 at ¶¶ 5-6: Smith Decl.; Doc. No. 22-5 at ¶¶ 5-6: Laws Decl.).  Last, Plaintiff alleges that when he was in Catawba County on June 17, 2015, Setzer took his property in retaliation for him filing a grievance.  (Doc. No. 1 at 3).  Setzer denies taking Plaintiff's property in retaliation for him filing a grievance, and further argues that Plaintiff failed to exhaust his administrative remedies as to this claim.  (Doc. No. 22-2 at ¶¶ 9; 21: Setzer Decl.).

II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

6

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

III. DISCUSSION

**A. Defendants' Argument that Plaintiff Failed to Exhaust his Administrative Remedies as to his First Amendment Claims against Defendants Carswell and Setzer**

In support of the summary judgment motion, Defendants first contend that Plaintiff's First Amendment claims against Carswell and Setzer are barred because he failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). The Court agrees. The PLRA requires that a prisoner exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that under the PLRA, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id.

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA

7

exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524).

Burke-Catawba has an inmate grievance policy. (Doc. No. 22-2 at ¶ 16: Setzer Decl.). If an inmate has a complaint about his incarceration, the inmate may request a grievance form. (Id.). Setzer reviews the grievance, and responds to all grievances, and notes any findings or actions she takes as a result. (Id. at ¶ 18). An inmate may appeal Setzer's response to administrator Boughman. (Id.). Here, Defendants have presented evidence showing that Plaintiff filed three grievances, on 6/2/15, 6/5/15, 6/8/15, all of which related to being prohibited from bringing his Bible when he was transferred to Catawba County. (Doc. No. 4 at 4-9; Doc. No. 22-2 at ¶ 20: Setzer Decl., Ex. 2). Plaintiff also filed other grievances unrelated to this case, but he never filed any grievances related to Defendant Carswell's confiscation of his Bible in his cell,³ or related to Defendant Setzer's taking of his property while he was in the Catawba County Jail, in retaliation for him filing a grievance.

In response to Defendants' argument that he has failed to exhaust his administrative

---

³ Plaintiff alleges that he filed a grievance against Carswell for the confiscation of his Bible, but the grievance was never given back to Plaintiff. (Doc. No. 4 at 2). Plaintiff, however, has failed to produce the actual grievance, and Defendants have established that he never filed such grievance. (Doc. No. 22-2 at ¶¶ 20-21, Ex. 2: Setzer Decl.). Plaintiff, however, does not allege that he filed a grievance relating to Setzer taking his property in retaliation for him filing a grievance.

8

remedies against Carswell and Setzer, Plaintiff alleges that "Burke/Catawba detention facility has no structured grievance procedures." (Doc. No. 27 at 9). Plaintiff then cites several cases for the proposition that Defendants cannot make the administrative process unavailable. (Id.). Last, Plaintiff argues that "[i]t is unreasonable to believe that the plaintiff did not file on Carswell when he had already filed several others in attempts to resolve similar issues." (Id.). These arguments fail for several reasons.

First, as evidenced by the grievances Plaintiff attached to his Verified Statement Concerning the Exhaustion of Administrative Remedies, (Doc. No. 4 at 4-8), and Response, (Doc. No. 27-1 at 1-8), there is a grievance procedure at Burke/Catawba. Plaintiff simply failed to use it for the claims against Carswell, which allegedly occurred on May 15, 2015, and for Setzer, which allegedly occurred on June 17, 2015. (Doc. No. 1 at 3; 5). None of the grievances attached to Plaintiff's Complaint concern these incidents.

In addition, the grievances attached by Plaintiff to his response do not address his claims against Carswell and Setzer. Instead, they address a sick call to see the nurse on August 6, 2015, property taken by Corporal Smart on August 27, 2015, and alleged disparate treatment by Sergeant Smith on September 28, 2015. (Doc. No. 27-1 at 1-8). Second, an "unavailable" grievance procedure may exist when "a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Plaintiff does not allege that he was prevented from filing any grievances. In fact, the record reflects the opposite—Plaintiff filed numerous grievances.

Third, Plaintiff cannot rest on his pleadings and ask the Court to assume that he filed a grievance when Defendants have met their burden to show that he did not file one. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005) (failure to exhaust is an

9

affirmative defense). Plaintiff must come forward with competent evidence to rebut Defendants' proof. His failure to do so mandates dismissal of these claims on failure to exhaust grounds. In sum, Plaintiff's claims against Defendants Carswell and Setzer must be dismissed for failure to exhaust administrative remedies, as Carswell and Setzer have demonstrated that Plaintiff has failed to exhaust his administrative remedies under the PLRA by compliance with Burke-Catawba's grievance policy.

Defendants further contend, and the Court agrees, that even if Plaintiff had exhausted his administrative remedies as to his First Amendment claims against Defendants Carswell and Setzer, these two Defendants would still be entitled to summary judgment on the merits. First, as to Plaintiff's claim that Defendant Carswell violated his First Amendment rights by seizing his uncovered Bible during a cell search, Defendants have submitted evidence on summary judgment showing that Burke-Catawba inmates are allowed three hard-covered books, and a Bible in the cells, but they are prohibited from possessing books without covers. (Doc. No. 22-3 at ¶¶ 10-11: Carswell Decl.). The policy operates in a neutral fashion, without regard to the books' content. As this Court explains in more detail, infra, under the Turner standard, this content-neutral regulation is constitutional. See also Bell v. Wolfish, 441 U.S. 520, 550 (1979) (holding that the restriction on receipt of hardbound books unless mailed from publishers, book clubs, or bookstores does not infringe on the First Amendment rights of inmates because it is reasonable to further the legitimate interests of maintaining security at the prison). The jail's limited restriction is a rational response by Burke-Catawba to the security problem of having books that promote violence or sexual behavior. As the Fourth Circuit has stated, when evaluating whether jail restrictions are constitutional,

courts must accord 'wide-ranging deference' to prison administrators' decisions

> concerning the proper means to accommodate prisoners' rights to the needs of 'internal order and discipline,' unless there is 'substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations.'

Dettmer v. Landon, 799 F.2d 929, 934 (4th Cir. 1986) (quoting Bell v. Wolfish, 441 U.S. at 547-48). Thus, even if Plaintiff had exhausted his administrative remedies as to his claim against Defendant Carswell, Carswell would nevertheless be entitled to summary judgment on the merits.

Next, as to Plaintiff's claim of relation against Defendant Setzer, to state a valid claim for retaliation under Section 1983, Plaintiff must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Moore v. Bennett, 777 F. Supp. 2d 969, 982 (E.D.N.C. 2011). Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Plaintiff has failed to allege specific facts supporting his retaliation allegations; thus, he cannot demonstrate that Setzer took his property in retaliation for filing a grievance. See White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989). That is, Defendants' evidence on summary judgment shows that Plaintiff's property was taken because when an inmate is transferred, his property is taken until the inmate returns to Burke-Catawba. (Doc. No. 22-2 at ¶ 10: Setzer Decl.; Doc. No. 22-3 at ¶ 5: Carswell Decl.). Furthermore, even if Plaintiff could demonstrate that Setzer retaliated against him, there is no evidence that the alleged retaliation resulted in some adversity to him sufficient to warrant concern about a chilling effect on the exercise of his constitutional rights. Am. Civil Liberties

Union v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993). That is, even after Setzer allegedly took the Plaintiff's property on June 17, 2015, Plaintiff filed additional grievances, as well as this lawsuit. Thus, even if Plaintiff had exhausted his administrative remedies as to his claim against Defendant Setzer, Setzer would nevertheless be entitled to summary judgment on the merits.

**B. Defendants' Argument that Plaintiff's First Amendment Claims against Defendants Laws and Smith Fail on the Merits**

Defendants next contend that, as to Plaintiff's First Amendment claims against Defendants Laws and Smith, these Defendants are entitled to summary judgment on the merits. For the following reasons, the Court agrees. The Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief.[4] Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)); see also Pell v. Procunier, 417 U.S. 817, 822 (1974) (noting that an inmate retains only those First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate

---

[4] Defendants state that they do not dispute that Plaintiff held a sincerely held religious belief, as required for a First Amendment claim.

12

penological objectives of the corrections system"). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. While an inmate's constitutional rights do not end when an inmate is incarcerated, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our penal system." Price v. Johnson, 334 U.S. 266, 285 (1948).

Courts have repeatedly held that deference should be given to prison and jail administrator's policies dealing with security because maintaining security is a legitimate penological interest. See, e.g., McRae v. Johnson, 261 F. App'x 554, 558 (4th Cir. 2008) (finding that "in the prison setting, suppression of contraband. . . [and] maintaining the health and safety of inmates and staff . . . constitute compelling governmental interests"); Morrison v. Garraghty, 239 F.3d 648, 658 (4th Cir. 2001) (stating in dicta that there is "little doubt" that a prison regulation that "limits the possession of personal property by prison inmates, is designed to serve legitimate safety and security concerns"); Monroe v. N.C. Dep't of Corr., 812 F.2d 1401, 1987 WL 35892, at *1 (4th Cir. 1987) (finding that the plaintiff's claim that the jail's policy of prohibiting him from taking his Bible during family visits was properly dismissed because the jail was simply providing an effective means of security); see also Warner v. Wright, 434 F. App'x 333, 2011 WL 2938021, at *2 (5th Cir. 2011) (holding that prison policy

13

prohibiting transfers of property, including religious materials, between inmates, was constitutional because its purpose was to preserve order and security in the prison).

Under Turner, then, to determine whether the Burke-Catawba policies at issue—prohibiting all items except legal materials in a transfer, and prohibiting books without a cover in a cell—are constitutionally permissible, this court must consider the following factors: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising that right that remain open to inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Turner, 482 U.S. at 89-90. For the following reasons, the Court finds that both policies, and the actions of Smith and Laws in following those policies, were constitutional.

First, it is clear that the Burke-Catawba regulation, which prohibits the transfer of all items except legal items, rationally advances a legitimate security interest. During a transfer, inmates are placed in a van, and contraband hidden in books could cause serious security and liability issues. (Doc. No. 22-4 at ¶ 6: Smith Decl.; Doc. No. 22-5 at ¶ 6: Laws Decl.; Doc. No. 22-2 at ¶ 7: Setzer Decl.). The book transfer policy reasonably advances inmates' safety and health—a legitimate jail safety concern. See Jehovah v. Clarke, 798 F.3d 169, 178 (4th Cir. 2015).

Second, Plaintiff has alternative means of expressing his faith. Turner, 482 U.S. at 90. In assessing this factor, the relevant inquiry is not whether the inmate has an alternative means of engaging in a particular religious practice that he or she claims is being affected; rather, the court is to determine whether the inmates have been denied "all means of [religious] expression."

14

O'Lone, 482 U.S. at 352. Nothing in the Burke-Catawba policy on transfer items prohibits an inmate from worshipping in his cell or throughout Burke-Catawba, or praying in the transport van. As set forth in Setzer's declaration, inmates are allowed Bibles in their cells, are afforded weekly religious services, and are allowed visitations from their religious leaders Monday through Friday. (Doc. No. 22-2 at ¶¶ 11-15: Setzer Decl.). Plaintiff is not prohibited from exercising his faith in the van. He is simply not allowed to bring a Bible, or any other non-legal documents, with him during the one-hour round trip. (Id. at ¶ 7).

Third, assuming Burke-Catawba allowed inmates to bring documents other than legal documents on transfer trips, staffing and security problems would result. (Doc. No. 22-4 at ¶ 6: Smith Decl.; Doc. No. 22-5 at ¶ 6: Laws Decl.; Doc. No. 22-2 at ¶ 7: Setzer Decl.). In addition, other facilities may have different policies on what items are allowed in the facility, and Burke-Catawba's policy prevents any issues with bringing prohibited documents to a new facility. Last, there is no ready alternative to the Burke-Catawba policy that would satisfy safety requirements. The burden is on Plaintiff, not Defendants, to show that there are obvious, easy alternatives, to the regulation at a de minimis cost to security interests. O'Lone, 482 U.S. at 350; Turner, 482 U.S. at 91. Although Plaintiff proposed an alternative that required Burke-Catawba employees to physically review all documents taken by transferred inmates, Defendants assert that the alternative is not reasonable based on Burke-Catawba's limited resources. (Doc. No. 22-2 at ¶ 8: Setzer Decl.).

Finally, even if Plaintiff's rights were violated by not being allowed to take his Bible during the short transfer to Catawba County, it was only a de minimis burden on his free exercise of religion, and his claim is therefore not actionable under the First Amendment. Plaintiff took three trips to Catawba County—from March 6-10, May 3-6, and June 15-18. (Doc. No. 22-2 at ¶

15

5: Setzer Decl.). Each trip took approximately one hour each way. (Id. at ¶ 6). Out of five months and twenty-one days, then, Plaintiff was deprived of his Bible for ten days at most while in Burke-Catawba custody. De minimis burdens on the free exercise of religion are not constitutionally significant. See Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (finding that the unavailability of a non-pork tray for Plaintiff at three meals out of 810 does not constitute more than a de minimis burden on inmate's free exercise of religion); Harke v. Ada Cnty. Sheriff's Office, No. 1:10cv24, 2011 WL 3679058, at **6-7 (D. Idaho Aug. 22, 2011) (rejecting inmate's claim that his rights were violated when he could not bring his Bible with him upon his transfer from one prison facility to another as de minimis and not actionable); Smith v. Graziano, No. 9:08cv469, 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010) (not permitting a prisoner to attend two religious services "is a de minimis, or insubstantial, burden on an inmate's ability to freely exercise his religion"). For all the reasons stated herein, the Court finds that Defendants have presented evidence on summary judgment showing that they did not violate Plaintiff's First Amendment rights.

In his response to Defendants' summary judgment motion, Plaintiff has failed to raise a genuine dispute of material fact as to whether his First Amendment rights were violated. That is, in his response, Plaintiff lists sixteen "facts" that he claims prevents Defendants from being granted summary judgment. (Doc. No. 27 at 1-2). However, the first eleven "facts" are simply restatements of the allegations in the Complaint. (Cf. Doc. No. 27 at 1-2, with Doc. No. 1, Statement of Claim at 3-5). "Facts" 12-16 are related to a sexual assault and other incidents that occurred after the events alleged in the Complaint. Therefore, these sixteen "facts" are not material facts requiring the denial of Defendants' motion for summary judgment.

In response to Defendants' arguments regarding Burke-Catawba's policy on prohibiting

16

items during transport, Plaintiff simply claims that Defendants cannot "dictate" another jail's transportation policy. (Doc. No. 27 at 9). However, as set forth in Defendants' summary judgment motion, the policy about what to allow on the transportation bus is Burke-Catawba's policy, as the inmates are in <u>their</u> custody. Thus, Burke-Catawba has not dictated the transportation policies for the Catawba County Jail.

Plaintiff also argues in his response to the summary judgment motion that Defendants' rationale does not satisfy the burden established by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) et seq. As a threshold matter, Plaintiff did not assert a claim under the RLUIPA in his Complaint—he alleged only a First Amendment claim. (Doc. No. 1). A party may not amend his complaint in his response to a motion for summary judgment. <u>Cloaninger ex rel. Estate of Cloaninger v. McDevitt</u>, 555 F.3d 324, 336 (4th Cir. 2009). In any event, even if Plaintiff could, at this stage in the proceedings, assert a new claim under the RLUIPA, Defendants would still be entitled to summary judgment on the merits of Plaintiff's RLUIPA claim. The RLUIPA provides, in pertinent part, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person-- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[5] 42 U.S.C. § 2000cc-1(a). In establishing a claim under the RLUIPA, a plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that

---

[5] Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." <u>See</u> <u>Lovelace v. Lee</u>, 472 F.3d 174, 199 n.8 (4th Cir. 2006).

exercise of religion. Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006). A substantial burden on religious exercise occurs when a state or local government "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 187.

The Supreme Court has stated that, although the RLUIPA must "be construed in favor of a broad protection of religious exercise," 42 U.S.C. § 2000cc-3(g), it must also be applied "with particular sensitivity to security concerns." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005). Courts are required to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with consideration of costs and limited resources." Id. at 723. In this regard, the "RLUIPA [is not meant] to elevate accommodation of religious observances over an institution's need to maintain order and safety." Id. at 722. Courts have routinely rejected the notion that confiscating religious books substantially burdens religious practices under the RLUIPA where other opportunities to worship exist. See Rountree v. Clarke, No. 7:11cv00572, 2015 WL 1021286, at **5-7 (W.D. Va. Mar. 9, 2015); Lacey v. Braxton, No. 7:10cv139, 2011 WL 3320801, at *10 (W.D. Va. Aug. 1, 2011); Marron v. Miller, No. 7:13cv00338, 2014 WL 2879745, at *2 (W.D. Va. June 24, 2014). Defendants have demonstrated in their summary judgment motion that there are numerous opportunities to worship at Burke-Catawba, and simply preventing Plaintiff from bringing a Bible on the short trip to Catawba County does not constitute a substantial burden. Thus, even if Plaintiff had alleged a RLUIPA claim in his Complaint, Defendants would be entitled to summary judgment as to this claim.

In sum, for the reasons stated herein, Defendants are entitled to summary judgment.[6]

IV. **CONCLUSION**

In sum, for the reasons stated herein, the Court finds that Plaintiff failed to exhaust his administrative remedies as to Defendants Carswell and Setzer, and his First Amendment claim against these Defendants is, in any event, without merit. As to Defendants Laws and Smith, Plaintiff has failed to raise a genuine issue of material fact as to whether his rights under the First Amendment were violated, and Defendants Laws and Smith are therefore entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 22), is **GRANTED**, and this action is dismissed.

2. The Clerk is respectfully instructed to terminate this action.

Frank D. Whitney
Chief United States District Judge

---

[6] Defendants also raise the defense of qualified immunity in their summary judgment motion. Because the Court finds no constitutional violation in the first instance, the Court does not address whether Defendants are entitled to qualified immunity.